UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JASON KIRSCHENBAUM, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 08-cv-1814 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

**I.   INTRODUCTION**

This action arises from the December 1, 2001 suicide bombing on Ben Yehuda Street in Jerusalem by members of the terrorist organization Hamas.[1] The attack killed 20 individuals and wounded over one-hundred others, including Jason Kirschenbaum, a United States citizen studying abroad in Israel at the time. Plaintiffs to this action include Jason, his parents, and his siblings. These same plaintiffs have previously brought suit against defendants Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") pursuant to the former "state-sponsored terrorism" exception to the Foreign Sovereign Immunities Act ("FSIA"), which, at the time of that suit, was codified at 28 U.S.C. § 1605(a)(7). In that case, this Court found defendants—who provided regular support to Hamas during the period surrounding the Ben Yehuda Street bombing—legally responsible for the attack that left Jason severely injured and emotionally traumatized, and awarded plaintiffs a total of $13.75 million in compensatory damages. *Kirschenbaum v. Islamic Republic of Iran*, 572 F. Supp. 2d 200, 212–14

---

[1] Throughout this opinion, references to "Hamas" refer to "Harakat al-Muqawama al-Islamiyya, the jihadist Palestinian militia" generally known by that name. *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 79 (D.D.C. 2006).

(D.D.C. 2008) ("*Kirschenbaum I*").  Plaintiffs also sought punitive damages, but the Court denied that request as unavailable under then-applicable law.  *Id*. at 214.

Prior to the Court's entry of judgment *Kirschenbaum I*, Congress passed the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"), which repealed § 1605(a)(7) and replaced it with a new state-sponsored terrorism exception.  Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008).  This new exception, codified at 28 U.S.C. § 1605A, "creat[ed] a federal right of action against foreign states, for which punitive damages may be awarded." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 40 (D.D.C. 2009) (citing *Simon v. Republic of Iraq*, 529 F.3d 1187, 1190 (D.C. Cir. 2008) ("*In re Terrorism Litig.*").  The NDAA also permits plaintiffs to have § 1605A retroactively applied in certain circumstances.  *Id*. at 62–63.  Plaintiffs here—the same plaintiffs as in *Kirschenbaum I*—seek to invoke the additional remedies provided by this new state-sponsored terrorism exception through the retroactive procedures outlined in the NDAA.  For the reasons set forth below, the Court finds that plaintiffs have sufficiently established their right to relief under § 1605A.

## II. PROCEDURAL HISTORY

### A. *Kirschenbaum I*

Plaintiffs filed their first action against defendants pursuant to § 1605(a)(7) in 2003. *Kirschenbaum I*, 572 F. Supp. 2d at 204.  The state-sponsored terrorism exception, as written at that time, was "merely a jurisdiction-conferring provision that d[id] not otherwise provide a cause of action . . . . [but] act[ed] as a pass-through to substantive causes of action . . . that may exist in federal, state or international law."  *Id*. at 209–10 (internal quotations and citations omitted).  The *Kirschenbaum I* Complaint, in accordance with then-standard practice, set forth state law claims for battery and intentional infliction of emotional distress.  *Id*. at 210.

2

The Court in *Kirschenbaum I* held a hearing to receive evidence supporting plaintiffs' claims on January 3, 2008. At that hearing, plaintiffs testified about the Ben Yehuda Street bombing and subsequent events, and the Court received documentary evidence substantiating plaintiffs' claims. *Id*. at 204. Based on the evidence presented, the Court made numerous findings of fact, *see generally Kirschenbaum I*, 572 F. Supp. 2d at 204–08, and ultimately determined that, under New York law, "defendants' actions proximately caused the severe injury of Jason Kirschenbaum and the subsequent emotional distress experienced by Jason, his father, mother, brothers and sister . . . . [and] conclude[d] that plaintiffs . . . established their claims or right to relief by evidence satisfactory to the court." *Id*. at 212 (internal quotations omitted). Based on these findings, the Court awarded Jason Kirschenbaum $5 million, each of his parents—Isabelle and Martin Kirschenbaum—$2.5 million, and each of his siblings—Danielle Teitlebaum, Joshua Kirschenbaum and David Kirschenbaum—$1.25 million. *Id*. at 213–14. The Court then denied the parties' request for punitive damages, as such damages "were not available against foreign states" under prevailing law. *Id*. at 214.

  **B.**  **This Action**

Plaintiffs filed this suit in October of 2008, not long after final judgment was entered in *Kirschenbaum I*. Complaint, Oct. 17, 2008 [3]. In their Complaint, plaintiffs allege four causes of action: extrajudicial killing under § 1605A, extrajudicial killing under federal common law, battery under New York law on behalf of Jason Kirschenbaum, and intentional infliction of emotional distress under New York law on behalf of all plaintiffs. *Id*. at ¶¶ 21–35. In support of these claims, plaintiffs allege that "Iran and MOIS have knowingly provided material support and substantial assistance to Hamas . . . in their terrorist activities, including the extrajudicial killings," and that the suicide bombing on Ben Yehuda Street in 2001 "was a foreseeable

consequence of such agreement, support and assistance, as were consequent personal injuries to Plaintiffs." *Id.* at ¶ 14.  Plaintiffs seek an award of $70 million in compensatory damages and $300 million in punitive damages.  *Id.* at 8.

Plaintiffs served copies of the relevant court papers, and the necessary translations, by diplomatic channels through the U.S. Department of State, as authorized by 28 U.S.C. § 1608(a)(4).  The diplomatic note submitted to the Court, as mandated by that provision, states that service of the court papers was effective on June 1, 2010, thus setting the due date for defendants' response on August 2, 2010.  *See id.* at § 1608(d) (stating that defendants "shall serve an answer or other responsive pleading . . . within sixty days after service has been made").  After defendants failed to respond or otherwise appear, the Clerk of the Court entered default on their behalf in early November.  Clerk's Entry of Default, Nov. 2, 2010 [23].  Plaintiffs then moved the Court for entry of default judgment, and asked the Court to take judicial notice of the evidence and findings in *Kirschenbaum I*.  Motion for Default Judgment, Nov. 13, 2010 [25].  Based on that motion, the record in this case, and facts available for judicial notice, the Court makes the following findings of fact and conclusions of law.

## III.    FINDINGS OF FACT

When defendants default in FSIA actions, the law does not permit a court to simply enter judgment without further inquiry; rather, a court must determine that the plaintiffs have "establishe[d their] claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e); *see Rimkus v. Islamic Republic of Iran*, ___ F. Supp. 2d __, __, No. 08 Civ. 1615, 2010 U.S. Dist. LEXIS 120991, at *13–14 (D.D.C. Nov. 16, 2010) (holding that FSIA courts must "inquire further before entering judgment against parties in default") (internal quotations omitted).  In satisfaction of this statutory obligation, plaintiffs ask that the Court take judicial

4

notice of the evidence and findings in *Kirschenbaum I*. For the reasons set forth in *Beer v. Islamic Republic of Iran*, the Court will consider the evidence presented in that earlier proceeding without requiring plaintiffs to re-present it, but will reach its own independent findings of fact. ___ F. Supp. 2d __, __; 2010 U.S. Dist. LEXIS 129953, at *8–10 (D.D.C. Dec. 9, 2010) ("*Beer II*").[2] The *Kirschenbaum I* Court received substantial testimonial and documentary evidence at the January 3, 2008 hearing. Based on that evidence the Court here makes the following findings of fact:

*Parties*

Documentary evidence establishes that Jason Kirschenbaum is, and was at all times, an American citizen domiciled in New York, *Kirschenbaum I*, 572 F. Supp. 2d at 204, and that he was studying abroad in Israel at the time of the bombing on Ben Yehuda Street. *Id*. at 205. The remaining plaintiffs constitute his mother and father,[3] as well as his three siblings. *Id*.

Defendant Iran "is a foreign state and has been designated a state sponsor of terrorism pursuant to section 69(j) of the Export Administration Act of 1979, 50 U.S.C. § 2405(j), continuously since January 19, 1984, *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 47 (D.D.C. 2006)—well before the attack in 2001. Defendant MOIS is Iran's secret police and

---

[2] The Court views *Kirschenbaum I* and this case as companion cases to *Beer v. Islamic Republic of Iran*, 574 F. Supp. 2d 1 (D.D.C. 2008) ("*Beer I*") and *Beer II*. Though the cases involve different events and different plaintiffs, they otherwise share numerous similarities. First, both the *Beer* and *Kirschenbaum* cases arise out of suicide bombings in Israel by operatives of Hamas. Second, *Beer I* and *Kirschenbaum I* were both brought pursuant to former § 1605(a)(7), both continued to proceed under that provision following enactment of the NDAA, both reached final judgment for plaintiffs, and the opinions in both were released on the same day—August 26, 2008. Third, plaintiffs in *Beer I* and *Kirschenbaum I* both received compensatory awards, and the Court denied punitive damages in both cases. Fourth, *Beer II* and this action were both filed on the same day, and just as the plaintiffs in *Beer II* were the same as those in *Beer I*, the plaintiffs in this action are the same as those in *Kirschenbaum I*. Finally, plaintiffs' counsel in this action is also counsel to plaintiffs in *Beer II*. Because of the numerous similarities between *Beer II* and this action, the cases raise several identical legal issues. As a result, throughout this opinion the Court often relies explicitly upon the analysis set forth, and conclusions reached, in the *Beer II* opinion, which was released six days ago.

[3] Though Jason's father, Martin Kirschenbaum, was alive at the time *Kirschenbaum I* was commenced, he is now deceased. His widow, Jason's mother Isabelle Kirschenbaum, thus brings suit as executrix of his estate. Complaint at ¶ 4.

intelligence organization. This Court has previously characterized it as a "division of the state of Iran," *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 65 (D.D.C. 2010), and at least one other court in this district has found that "Iran funnels much of its support to Hamas through MOIS." *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 262 (D.D.C. 2003).

*The December 1, 2001 Suicide Bombing*

The first-hand testimony of Jason Kirschenbaum establishes the following facts:

> Jason Kirschenbaum was walking toward Burger King on Ben Yehuda Street when suddenly he heard a loud explosion up the street. Seconds later, he heard another loud explosion and was simultaneously thrown to the ground. . . . The first bomb went off at the end of Ben Yehuda Street, and the second went off right next to Jason Kirschenbaum.

*Kirschenbaum I*, 572 F. Supp. 2d at 205. Jason's recollection of the events is consistent with other evidence concerning the 2001 bombings on Ben Yehuda Street. *See* U.S. Dep't of State, *Patterns of Global Terrorism 2001* app. A, at 83 (2002) ("On 1 December, two suicide bombers detonated explosives on a busy down-town pedestrian mall."). As a result of the explosion, Jason suffered severe injuries to his arm and leg, and also sustained emotional trauma from graphic exposure to the bloody and devastating aftermath. *Kirschenbaum I*, 572 F. Supp. 2d at 205–06. In addition to Jason's injuries, the attack killed at least 10 people and wounded 120 others. *Patterns of Global Terrorism 2001*, *supra* at app. A, at 83. Finally, documentary evidence presented in *Kirschenbaum I* establishes that Hamas claimed responsibility for the attack shortly after it occurred. 572 F. Supp. 2d at 206; *see also Patterns of Global Terrorism 2001*, *supra* at app. A, at 83 (observing that "HAMAS claimed responsibility" for the bombing).

*Iranian Support for Hamas and Involvement in the 2001 Bombing*

The evidence presented to the Court in *Kirschenbaum I* establishes that "Iran has continuously provided material support in the form of, *inter alia*, funding, training, and safe

6

haven to Hamas and its members so that they may undertake terrorist attacks like the one in this action." 572 F. Supp. 2d at 211. And numerous counts in FSIA actions brought in this district have found equally strong connections between defendants and Hamas. *See, e.g.*, *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 14 n.4 (D.D.C. 2009) ("Hamas . . . is an organization that has been supported over the years by the Islamic Republic of Iran, primarily through . . . MOIS."); *Bennett v. Islamic Republic of Iran*, 604 F. Supp. 2d 152, 154 (D.D.C. 2009) (finding sufficient evidence to determine that "Iran and its MOIS provided material support to Hamas in furtherance of its terrorist objectives"); *Beer v. Islamic Republic of Iran*, 574 F. Supp. 2d 1, 6 (D.D.C. 2008) ("Hamas is an organization supported by Iran."). Moreover, according to the U.S. Department of State, "Hamas receives some funding, weapons, and training from Iran." U.S. Dep't of State, *Country Reports on Terrorism 2009*, Chp. 6 (2010). This finding is entirely consistent with the State Department's determinations at the time of the Ben Yehuda Street bombing. *See Patterns of Global Terrorism 2001*, *supra* at app. B, at 93 (stating that Hamas "[r]eceives funding from Palestinian expatriates, Iran, and private benefactors . . . ."). Based on this evidence, the Court determines that Iran and MOIS routinely provided support in various forms to Hamas for their terrorist activities, and that this provision of support directly led to the December 1, 2001 Ben Yehuda Street suicide bombing that severely injured Jason Kirschenbaum.

## IV.    CONCLUSIONS OF LAW

Based on the above findings of fact, the Court reaches the following conclusions of law:

### A.    Jurisdiction

Under the FSIA, "foreign states generally enjoy immunity from suit in U.S. courts." *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 329 (D.C. Cir. 2003). The state-sponsored

terrorism exception can overcome this immunity, but only in limited circumstances where the facts (1) justify the exercise of original jurisdiction by the Court and (2) waive defendants' sovereign immunity so that the Court may hear the case.

The Court obtains original jurisdiction only in suits where (1) "money damages are sought," (2) "against a foreign state" for (3) "personal injury or death" that (4) "was caused" (5) "by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act." 28 U.S.C. § 1605A(a)(1). Here, plaintiffs seek only money damages. Complaint at 8. Moreover, Iran is plainly a foreign state, and MOIS, which is "'an integral part of Iran's political structure,'" also constitutes a foreign state under established precedent. *Beer II*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 129953 at \*16–17 (quoting *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 300 (D.C. Cir. 2005)). In addition, Jason Kirschenbaum's testimony establishes that he was injured in the Ben Yehuda Street bombing and that his family members suffered as a result, *see supra* Section III, while other evidence demonstrates that Iran's support of Hamas—funneled through MOIS—led to the attack. *See id*. Finally, the regular financial support defendants provided to Hamas constitutes provision of material support. The Court therefore has jurisdiction over this case.

As to defendants' waiver of sovereign immunity, this occurs by operation of statute (1) where "the foreign state was designated as a state sponsor of terrorism at the time [of] the act . . . and . . . remains so designated when the claim is filed," and (2) the claimant or the victim was, at the time of the act . . . a national of the United States [or] a member of the armed forces [or] otherwise an employee of the Government of the United States . . . acting within the scope of the employee's employment," and (3) "in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable

opportunity to arbitrate the claim." 28 U.S.C. § 1605A(a)(2)(i)–(iii).  Here, Iran was—and remains—a designated state-sponsor of terrorism, *see supra* Section III, and all plaintiffs are American citizens.  *See id*.  Moreover, the attack occurred in Israel, and so the parties are under no obligation to attempt to arbitrate the dispute.  Thus, the Court may hear this case, as defendants' sovereign immunity is waived by statute.[4]

### B.  Retroactive Application of § 1605A to this Case

In creating the new state-sponsored terrorism exception, Congress provided that the provision could be retroactively applied in certain situations.  In particular, "a plaintiff in a case pending under former § 1605(a)(7) may move the Court to have that case treated as if brought under § 1605A, or a plaintiff may bring a separate action under § 1605A within a specified range following final judgment in the earlier related proceeding." *Rimkus*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 120991 at *46.  Plaintiffs followed this latter approach, filing this action less than two months after final judgment in their original proceeding under § 1605(a)(7).  *Compare Kirschenbaum I*, 572 F. Supp. 2d at 214 (entering final judgment on August 26, 2008), *with* Complaint at 1 (initiating this action on October 17, 2008).  This suit thus qualifies for retroactive application of § 1605A.  NDAA § 1083(c)(3) (stating that new § 1605A case related to prior § 1605(a)(7) case "may be brought . . . if the action is commenced not later than . . . 60 days after the date of entry of judgment in the original action").

### C.  Causes of Action

The Complaint sets forth four causes of action.  Complaint Counts I–IV.  In the first two, the plaintiffs allege claims for "Personal Injuries Caused by Extrajudicial Killings"; one under §

---

[4] Plaintiff served defendants through diplomatic channels on June 1, 2010, Return of Service/Affidavit, Aug. 20, 2010 [19], as authorized under the FSIA.  28 U.S.C. § 1608(a)(4).  The Court thus has personal jurisdiction over defendants.  *See Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 296 (D.D.C. 2003) (holding that personal jurisdiction exists over non-immune foreign state where service is effected under §1608).

1605A (Count I), and one under federal common law (Count II).  In the second two, the Complaint sets forth claims for battery (Count III) and intentional infliction of emotional distress (Count IV), both under New York law.  For the reasons set forth in *Beer II*, the § 1605A Count is deficient—as "plaintiffs in FSIA actions must 'articulate the justification for their recovery, generally through the lens of civil tort liability,'" *Beer II*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 129953 at *24 (quoting *Rimkus*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 120991 at *28)—but may still be considered by the Court, while the federal common law Count is dismissed as "improper, duplicative and unnecessary."  *Id*.  Moreover, because the state-sponsored terrorism exception no longer acts simply as a "jurisdiction conferring provision," *Valore*, 700 F. Supp. 2d at 57, plaintiffs' state law claims shall be dismissed, as they are "based on an improper source of law."  *Beer II*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 129953 at *28.  As in *Beer II*, however, the Court will draw upon the theories set forth in the allegations supporting these state law claims to remedy the deficiencies in the § 1605A claim.  *Id*.

      **D.**    **Liability**

The state-sponsored terrorism exception's federal cause of action permits plaintiffs to bring suits against a foreign state for (1) "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act" where (2) the act was committed, or the provision provided, by the foreign state or an official, employee, or agent of the foreign state if the act (3) "caused" (4) "personal injury or death" (5) "for which courts of the United States may maintain jurisdiction under this section for money damages."  28 U.S.C. §§ 1605A(a)(1) & (c).  As the Court has often explained, the third and fourth elements of this claim—causation and injury—require a plaintiff to "prove a theory of liability under which

defendants cause[d] the requisite injury or death." *Valore*, 700 F. Supp. 2d at 73. The Court takes each of these elements in turn.

 1. Act

Plaintiffs' central allegations in this case are that "Defendants Iran and MOIS have knowingly provided material support and substantial assistance to Hamas . . . in their terrorist activities," Complaint at ¶ 14, that Hamas orchestrated the suicide bombing of Ben Yehuda Street, and that the "killings involved were 'extrajudicial' killings within the meaning of" the FSIA's state-sponsored terrorism exception. *Id*. at ¶¶ 12–13. These allegations implicate the FSIA's prohibition against both extrajudicial killings and the provision of material support to terrorist organizations. 28 U.S.C. § 1605A(a)(1).

Under the FSIA, an extrajudicial killing is defined as

> [(1)] a deliberated killing [(2)] not authorized by a previous judgment pronounced by a regularly constituted court [(3)] affording all judicial guarantees which are recognized as indispensable by civilized peoples.

Torture Victim Protection Act of 1991 § 3(a), 28 U.S.C. § 1350 note. The evidence establishes that an extrajudicial killing occurred here, as the bombing was planned and deliberate, and the attack was not sanctioned by any judicial body. *See supra* Section III. However, just as in *Beer II*, the evidence here does not establish that Iran or MOIS provided any specific support for, or otherwise directed Hamas agents in, the 2001 Ben Yehuda Street attack; nor does it demonstrate that the Hamas bombers acted at the behest of defendants. Thus, while the attackers undoubtedly perpetrated numerous extrajudicial killings, Iran and MOIS cannot be held vicariously liable for the murders under theories of agency. *See Beer II*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 129953 at *30–33 (noting that agency requires agent to "act on [principal's] behalf and subject to his control") (citing Restatement (Second) of Agency § 1(1) (1958)).

Plaintiffs have established, however, that Iran and MOIS are subject to liability for the provision of material support to Hamas. The FSIA defines this act by reference to the U.S. criminal code, 28 U.S.C. § 1605A(h)(3), which includes provision of

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel . . . and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b)(1). Under established precedent, "the routine provision of financial assistance to a terrorist group in support of its terrorist activities constitutes providing material support and resources for a terrorist act within the meaning'" of the state-sponsored terrorism exception. *In re Terrorism Litig.*, 659 F. Supp. 2d at 42 (quoting *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 19 (D.D.C. 1998)). And where the practice of regularly financing a terrorist organization is established by sufficient evidence, "'a plaintiff need not establish that the material support or resources provided by a foreign state for a terrorist act contributed directly to the act from which his claim arises.'" *Murphy*, ___ F. Supp. 2d __, __, 2010 U.S. Dist. LEXIS 101250, at *48 (D.D.C. Sep. 24, 2010) (quoting *In re Terrorism Litig.*, 659 F. Supp. 2d at 42). The evidence in *Kirschenbaum I* has established, and other sources have confirmed, that Iran provided regular financial support—funneled through MOIS—to Hamas during the period surrounding the Ben Yehuda Street attack. *See supra* Section III. Based on these facts, the Court finds that defendants provided material support for the suicide bombing—an extrajudicial killing—that severely injured Jason Kirschenbaum and emotionally traumatized his family.

    **2.**    **Actor**

The Court has determined that defendants Iran and MOIS provided material support to Hamas, and that this support in part led to the horrific suicide bombings that struck Ben Yehuda

Street in 2001.  *See supra* Section III.B.  Defendants may therefore be held liable for these acts under the state-sponsored terrorism exception.

### 3.     Theory of Recovery – Causation & Injury

"[P]laintiffs in FSIA cases must set forth a legal theory that courts can apply to the facts of the case in order to determine whether a foreign state may be held liable under the federal cause of action in § 1605A."  *Beer II*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 129953 at *35.  These theories should be based on "well-established principles of law, such as those found in Restatement (Second) of Torts and other leading treatises, as well as those principles that have been adopted by the majority of state jurisdictions."  *In re Terrorism Litig.*, 659 F. Supp. 2d at 61.  Here, drawing upon the plaintiffs' otherwise-improper state law claims, the Court construes the Complaint to set forth theories of recovery for battery and intentional infliction of emotional distress under § 1605A's federal cause of action.  The Court discusses each theory in turn.

*Battery*

The *Murphy* Court has previously articulated the scope of the theory of recovery for battery under § 1605A:  "[Defendant] is liable for battery in this case if, [(1)] when it . . . provided material support and resources therefor, it acted 'intending to cause a harmful or offensive contact with . . . , or an imminent apprehension of such a contact' by, those attacked and (2) 'a harmful contact with' those attacked 'directly or indirectly resulted.'"  ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 101250 at *55 (quoting Restatement (Second) of Torts § 13).  Under this theory, harmful contact results when it causes "any physical impairment of the condition of another's body, or physical pain or illness."  Restatement (Second) of Torts § 15.  Here, defendants provided regular support to Hamas with full knowledge of the murderous terrorist attacks—like the Ben Yehuda Street bombing—that would result from such provision.

13

*See supra* Section III. "[A]cts of terrorism are, by their very nature, intended to harm and to terrify by instilling fear of such harm." *Murphy*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 101250 at *56. And the evidence here establishes that Jason Kirschenbaum suffered severe injuries as a result of the 2001 attack. *See supra* Section III. Plaintiffs have therefore established a claim for battery by sufficient evidence.

*Intentional Infliction of Emotional Distress*

FSIA Courts have, on numerous occasions since the enactment of the NDAA, articulated the general theory of recovery based on intentional infliction of emotional distress, explaining: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 26 (D.D.C. 2009). The scope of this theory is limited by two qualifications: the plaintiff must be "a member of [the injured person's] immediate family" and must be "present at the time." Restatement (Second) of Torts § 46(2)(a)–(b).[5]

Here, the evidence presented in *Kirschenbaum I* establishes that plaintiffs have proved claims for intentional infliction of emotional distress. As this Court stated in that case, "defendants' motives in providing material support to Hamas were to facilitate a deliberately outrageous act of terrorism intended to not only cause physical harm to those present in Ben

---

[5] The Court pauses to note that the estate-plaintiff in this action—the estate of Jason Kirschenbaum's father, Martin Kirschenbaum—seeks pain and suffering and punitive damages. Such awards, however, are not universally available for estate-plaintiffs. *Anderson v. Islamic Republic of Iran*, ___ F. Supp. 2d __, __, No. 08 Civ. 535, 2010 U.S. Dist. LEXIS 126457, at *32–33 (D.D.C. Dec. 1, 2010). Rather, as this Court has previously discussed, the question of whether an estate-plaintiff has standing to pursue a theory of intentional infliction of emotional distress in a FSIA action under § 1605A is controlled "by the law of the state which also governs the creation of the estate." *Id*. Here, the estate of Martin Kirschenbaum is governed by New York law. Complaint at ¶¶ 3–4. And under New York law, "all tort and contract actions that belonged to a decedent may . . . be maintained by the estate's personal representative." *Heslin v. County of Greene*, 923 N.E.2d 1111, 1114 n.4 (N.Y. 2010); *see also* N.Y. E.P.T.L. § 11-3.2 ("No cause of action for injury to person . . . is lost because of the death of the person in whose favor the cause of action existed."). Thus, the cause of action here may stand, as the estate's executrix, Isabelle Kirschenbaum, is proceeding with the claim.

Yehuda Street, but also to instill terror in their loved ones and others." *Kirschenbaum I*, 572 F. Supp. 2d at 212. And here, neither limitation to the theory of intentional infliction of emotional distress is applicable: plaintiffs are all either Jason Kirschenbaum's parents or siblings, and any presence requirement is waived due to the unique and particularly horrific nature of defendants' conduct. *See Anderson v. Islamic Republic of Iran*, ___ F. Supp. 2d __, __, 2010 U.S. Dist. LEXIS 126457, at *45–46 (D.D.C. Dec. 1, 2010) (holding that "[t]errorism is unique . . . in both its extreme methods and aims . . . [and is] intended to cause the highest degree of emotional distress . . . [thus] a plaintiff need not be present") (internal citations and quotations omitted). Based on these findings, plaintiffs have established claims under § 1605A based on the theory of intentional infliction of emotional distress.

    **4.**  **Jurisdiction**

The Court has already determined that it may exercise jurisdiction over defendants, and that plaintiffs are only seeking monetary compensation. *See Supra* Section IV.A. Plaintiffs have therefore provided sufficient evidence to support each element of the federal cause of action under § 1605A, and thus the Court holds defendants liable for the severe and traumatizing injuries to Jason Kirschenbaum, and the emotional distress suffered by his family, which resulted from the tragic suicide bombing of Ben Yehuda Street in Jerusalem on December 1, 2001.

**V. DAMAGES**

In their Complaint, plaintiffs seek $70 million in compensatory damages, and $300 million in punitive damages. Complaint at 8. As to compensatory damages, this Court held in *Beer II* that "plaintiffs who obtained compensatory damages from a suit brought pursuant to former § 1605(a)(7)—including those before the Court in this case—may not obtain additional compensatory relief as a remedy to the federal cause of action in § 1605A where that subsequent

15

suit arises out of the same terrorist act." ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 129953 at *45–46. Thus, principles of double-recovery prevent plaintiffs from obtaining any compensatory damages here. With respect to punitive damages, a substantial risk exists that a traditional punitive award based on standard methods employed in FSIA cases would result in an award that, in this case, could potentially violate the Court's obligation to avoid "grossly excessive or arbitrary punishments on a tortfeasor." *Hunter v. D.C.*, 384 F. Supp. 2d 257, 261 (D.D.C. 2005). Thus, the Court here shares the same concerns that the Court in *Beer II* discussed, *see generally Beer II*, ___ F. Supp. 2d at __, 2010 U.S. Dist. LEXIS 129953 at *46–53, and invites plaintiffs here to join the *Beer II* plaintiffs in briefing the Court on those issues.

## VI.   CONCLUSION

The Ben Yehuda Street bombing was another horrific attack in an unfortunately long line of murderous acts of violence and terrorism that have plagued Israel, and much of the world, for far too long. Jason Kirschenbaum, an American student studying abroad, was severely injured that day, and scarred—both physically and emotionally—in many ways that will never truly heal. His family in the United States, moreover, was left in a state of shock, panic, fear and helplessness that the Court simply cannot fathom. Having previously awarded compensatory damages to the Kirschenbaum family, the Court now finds that defendants should be subjected to punitive measures for their role in supporting the treacherous acts of Hamas, and awaits the plaintiffs' view as to what sanction is appropriate to help prevent another family from suffering such a terrible fate. Accordingly, it is hereby

ORDERED that judgment is entered against all defendants as to liability for plaintiffs' federal cause of action brought pursuant to 28 U.S.C. § 1605A in Count I of the Complaint; it is furthermore

ORDERED that Counts II through IV of the Complaint are dismissed with prejudice; it is furthermore

ORDERED that plaintiffs shall either

1.  join with the plaintiffs in *Beer v. Islamic Republic of Iran*, No. 08-cv-1807, in providing the Court with a memorandum of law addressing the concerns about the proper measurement of punitive damages raised by the Court's memorandum opinion in that case; or

2.  provide the Court with a supplemental memorandum addressing those subjects by January 10, 2011.

SO ORDERED

Signed by Royce C. Lamberth, Chief Judge, on December 15, 2010.